CENTER FOR DISABILITY ACCESS
Raymond Ballister Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Dennis Price, Esq., SBN 279082
8033 Linda Vista Rd, Suite 200
San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
russ @ potterhandy.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Chris Langer**,<br><br>          Plaintiff,<br><br>     v.<br><br>**Donnabelle Veler**, in individual and representative capacity as trustee of the Donnabella Veler Revocable Trust dated 1/25/2001; **Lux Evergreen, Inc.**, a California Corporation; and Does 1-10,<br><br>          Defendants. | **Case:** 3:20-cv-00629-AJB-AGS<br><br>**Plaintiff's Opposition to Defendant;' Veler's Motion to Dismiss**<br><br>**Date:** August 27, 2020<br>**Time:** 2:30 p.m.<br>**Ctrm:** 4A<br><br>**Hon. Anthony J. Battaglia** |

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................i

TABLE OF AUTHORITIES...........................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES ...............................1

I.     Preliminary statement...........................................................1

Ii.    Even if veler has sold the property, this court has
       jurisdiction over veler given the continued viability
       o the ada claim against lux evergreen...............................1

iii.   The complaint sufficiently alleges an "injury in fact."
       Veler's argument that langer must allege all sorts of
       evidentiary-level details demonstrates a
       misunderstanding of the law. ...........................................2

iv.    Veler's argument that langer's allegation lacks
       credibility due to his history of filing ada lawsuits
       misreads the law..............................................................9

v.     This court has supplemental jurisdiction..........................10

vi.    The state claims do not predominate, there are no
       novel or complex state issues, and there are no
       exceptional circumstances to justify declining to
       exercise supplemental jurisdiction..................................13

   A.  There are no novel or complex issues of state law. ...................13

   B.  The state claim for a single penalty certainly does not
       predominate, much less "substantially" predominate
       in this case....................................................................14

   C.  There are no exceptional circumstances or compelling
       reasons..........................................................................16

VII.   CONCLUSION ..................................................................25

Opposition to Motion to Dismiss          Case: 2:20-cv-00951-JAK-PJW

1

**TABLE OF AUTHORITIES**

2

3

**Cases**

4

*Baker v. Palo Alto University, Inc.,*

5

    2014 WL 631452 (N.D. Cal., 2014) ................................. 11

6

*Baughman v. Walt Disney World Co.,*

7

    685 F.3d 1131 (9th Cir. 2012) .............................................5

8

*Boemio v. Love's Restaurant,*

9

    954 F.Supp. 204 (S.D. CA 1997) ......................................5

10

*Borough of W. Mifflin v. Lancaster,*

11

    45 F.3d 780 (3d Cir. 1995) ................................................ 12

12

*City of Chicago v. Mills,*

13

    204 U.S. 321, 27 S. Ct. 286, 51 L. Ed. 504 (1907)......................... 16

14

*Civ. Rights Educ. and Enf't Ctr. v. Hosp. Properties Tr.,*

15

    867 F.3d 1093 (9th Cir. 2017) ......................................... 7, 9

16

*Daenzer v. Wayland Ford, Inc.,*

17

    193 F. Supp. 2d 1030 (W.D. Mich. 2002) ........................ 12

18

*Delgado v. Orchard Supply Hardware Corp.,*

19

    826 F. Supp.2d 1208 (E.D. Cal. 2011) ............................. 12

20

*D'Lil v. Best Western Encina Lodge & Suites,*

21

    538 F.3d 1031 (9th Cir. 2008) ...........................................8

22

*Doran v. 7-Eleven, Inc.,*

23

    524 F.3d 1034 (9th Cir. 2008) ...........................................8

24

*Exec. Software N. Am., Inc. v. U.S. Dist. Court for Cent. Dist.*

25

    *of California,*

26

    24 F.3d 1545 (9th Cir. 1994). ............................ 21, 22, 23

27

*Hamilton v. Roth,*

28

    624 F.2d 1204 (3d Cir. 1980) ........................................ 19

*Houston v. Marod Supermarkets, Inc.*,
    733 F.3d 1323 (11th Cir. 2013) ....................................................... 10

*In Munson v. Del Taco, Inc.*,
    46 Cal. 4th 661 (2009) .................................................................. 16

*In re Aircrash Disaster Near Roselawn, Indiana on October 31,*
    *1994*, 909 F. Supp. 1083 (N.D. Ill. 1995), *aff'd and*
    *remanded sub nom. In re Air Crash Disaster Near Roselawn*
    *on Oct. 31, 1994*, 96 F.3d 932 (7th Cir. 1996) ................................ 17

*Kohler v. Islands Restaurants, LP*,
    956 F. Supp. 2d 1170 (S.D. Cal. 2013) ........................................... 13

*Kohler v. Rednap, Inc.*,
    794 F. Supp. 2d 1091 (C.D. Cal. 2011) .............................. 12, 19, 20

*Kuba v. 1-A Agr. Ass'n*,
    387 F.3d 850 (9th Cir. 2004) .............................................................. 11

*Kyles v. J.K. Guardian Sec. Servs.*,
    222 F.3d 289 (7th Cir. 2000) ............................................................. 8

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................... 6

*Mendoza v. Zirkle Fruit Co.*,
    301 F.3d 1163 (9th Cir. 2002) ........................................................ 1, 2

*Moore v. Dollar Tree Stores Inc.*,
    85 F. Supp. 3d 1176 (E.D. Cal. 2015) ............................................. 13

*Schoors v. Seaport Village Operating Co., LLC*,
    2017 WL 1807954 (S.D. Cal. May 5, 2017) ..................................... 12

*Schutza v. Cuddeback*,
    262 F. Supp. 3d 1025 (S.D. Cal. 2017) ...................................... 14, 15

*Trafficante v. Metro. Life Ins. Co.*,
    409 U.S. 205 (1972) ........................................................................... 8

iii

*United Mine Workers of Am. v. Gibbs*,

    383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2s 218 (1966) .................... 11

*Wheeler v. City & Cty. of Denver*,

    229 U.S. 342, 33 S. Ct. 842, 57 L. Ed. 1219 (1913) ....................... 17

*White v. Wisco Restaurants, Inc.*,

    2018 WL 1510611 (S.D. Cal. Mar. 27, 2018)................................ 18

*Wilson v. Haria & Gogri Corp.*,

    479 F. Supp. 2d 1127 (E.D. Cal. 2007) ................................................6

*Wilson v. Kayo Oil Co.*,

    563 F.3d 979 (9th Cir. 2009) ................................................................7

**Statutes**

28 U.S.C. § 1367 ........................................................................ 10

28 U.S.C. § 1367(c) ................................................................... 13

42 U.S.C.A. § 12182(a) ...............................................................3

Cal. Civ. Code § 51(f) ............................................................... 11

Cal. Civ. Code § 55.56(e) .......................................................... 15

**Other Authorities**

Denis F. McLaughlin, *The Federal Supplemental Jurisdiction Statute--A*

    *Constitutional and Statutory Analysis*, 24 Ariz. St. L.J. 849 (1992)22, 24

*Federal Courts Study Committee Implementation and Civil Justice Report*

    *Act: Hearings on H.R. 5381 Before the Subcomm. on Courts, Intellectual*

    *Property, and the Administration of Justice,* 101st Cong., 2d Sess. at 708

    (1991) ...................................................................................... 22

Pub. L. No. 101-650, 104 Stat. 5089 ...................................... 22

Opposition to Motion to Dismiss        Case: 2:20-cv-00951-JAK-PJW

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Preliminary statement

Veler argues that the ADA claim for relief against her is moot as she has sold the property after the lawsuit was filed. Assuming the sale is accurate, this would be a true statement. The only remedy remaining against Veler would be under the Unruh Civil Rights Act. But this Court continues to have pendent party jurisdiction over Veler as there remains a valid ADA claim against Defendant Lux Evergreen.

Additionally, Veler moves this Court to dismiss the entire complaint on the basis that Langer has not sufficiently alleged an injury in fact or, alternatively, to decline to exercise supplemental jurisdiction over the state claims for a variety of reasons. But Langer has sufficiently met the Rule 8 pleading requirements, has sufficiently alleged an injury in fact, and there is no basis for declining to exercise supplemental jurisdiction.

### II.   Even if Veler has sold the property, this Court has jurisdiction over Veler given the continued viability o the ADA claim against Lux Evergreen

When a district court has original jurisdiction over a case, it also enjoys supplemental jurisdiction over the state claims even if those state claims involve joining "additional parties" that are not part of the federal claim.[1] This is called supplemental or pendent party jurisdiction. Supplemental or pendent party jurisdiction is constitutional so long as the state law claim is part of the same case or controversy as the federal claim.[2] The Westlaw headnote 13 for the *Mendoza* case summarizes the holding

---

[1] 28 U.S.C. § 1367(a).

[2] *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1174 (9th Cir. 2002).

Opposition to Motion to Dismiss                    Case: 2:20-cv-00951-JAK-PJW

more succinctly than the decision itself: "A district court does not violate the Constitutional article governing the judiciary if it exercises supplemental subject matter jurisdiction involving a party over whom there is no independent basis for federal court jurisdiction, provided that the federal and state claims form but one constitutional case and derive from a common nucleus of operative fact."

### III.   The Complaint sufficiently alleges an "injury in fact." Veler's argument that Langer must allege all sorts of evidentiary-level details demonstrates a misunderstanding of the law.

Langer has met the Rule 8 standard for explaining how the alleged barriers caused him injury in fact. Langer alleges that he is a paraplegic who uses a wheelchair for mobility and has a van with a ramp.[3] He alleges that Lux Evergreen owns and operates The Kar Place at 900 W. Mission Ave, Escondido and that Veler owned property in March of 2020.[4] Langer alleges that he went to the Kar Place in March of 2020 to avail himself of its goods.[5] He alleges that the defendants "failed to provide wheelchair accessible parking" for "wheelchair users like the plaintiff."[6] Langer alleges that this barrier "relates to and impacts the plaintiff's disability: and that he "personally encountered these barriers" and it caused him "difficulty and discomfort."[7] Finally, Langer alleged that he will return to

---

[3] Complaint (Docket Entry 1), ¶ 1.

[4] Complaint (Docket Entry 1), ¶¶ 2-5.

[5] Complaint (Docket Entry 1), ¶ 10.

[6] Complaint (Docket Entry 1), ¶¶ 12.

[7] Complaint (Docket Entry 1), ¶¶ 14-16.

2

1  the business to shop once it has been represented to him that the facilities
2  are accessible but is deterred from doing so until then.[8]

3      As discussed below, "injury in fact" under the ADA means a denial
4  of "full and equal" access and this is defined, simply, as encountering a
5  "barrier," i.e., a violation of an ADA Access Standard. It is an objective test
6  and has been adequately pled in this case. The general rule under the ADA
7  is that a person with a disability shall not be discriminated against "in the
8  full and equal enjoyment of the goods, services, facilities, privileges,
9  advantages, or accommodations of any place of public accommodation . .
10  . ."[9] The Ninth Circuit has held that the phrase "full and equal" is a term of
11  art, having specific reference to the ADA Access Standards.[10] Sitting en
12  banc, the *Chapman* court held:

13
14      Because the ADAAG establishes the technical standards
15      required for "full and equal enjoyment," if a barrier violating
16      these standards relates to a plaintiff's disability, it will impair
17      the plaintiff's full and equal access, which constitutes
18      "discrimination" under the ADA. That discrimination
19      satisfies the "injury-in-fact" element of *Lujan*. As we have
20      held, once a disabled plaintiff has encountered a barrier
21      violating the ADA, "that plaintiff will have a 'personal stake
22      in the outcome of the controversy' so long as his or her suit is
23      limited to barriers related to that person's particular
24      disability."

25  _____
26  [8] Complaint (Docket Entry 1), ¶ 20.
27  [9] 42 U.S.C.A. § 12182(a).
28  [10] *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir.
        2011).

[*Chapman*, 631 F.3d at 947.]

This is not to say that *any violation* of the ADA Standards is actionable by Langer. The *Chapman* court explains that the barrier must relate to the plaintiff's "particular disability."[11] The example given by the *Chapman* court was that while a "blind person would have standing to assert an ADA violation" for the lack of Braille, a wheelchair user would not.[12] But the *Chapman* court was also clear that a wheelchair user has standing to sue for all barriers that relate to wheelchair users *without having to detail* how such a barrier *personally affected* him. It is an objective test. The *Chapman* court explains: "Where the barrier is related to the particular plaintiff's disability, however, an encounter with the barrier *necessarily injures* the plaintiff by depriving him of full and equal enjoyment of the facility."[13] The *Chapman* court held that this is a straight-forward test:

> A disabled person who encounters a "barrier," i.e., an architectural feature that fails to comply with an ADAAG standard relating to his disability, suffers unlawful discrimination as defined by the ADA. 42 U.S.C. § 12182(b)(1)(A)(i). Indeed, by "establish[ing] a national standard for minimum levels of accessibility in all new facilities," *Indep. Living Res.*, 982 F.Supp. at 714, the ADAAG removes the risk of vexatious litigation that a more subjective test would create.
>
> Those responsible for new construction are on notice that if they comply with the ADAAG's objectively measurable

---

[11] *Chapman*, 631 F.3d at 947.

[12] *Chapman*, 631 F.3d at 947, fn. 4.

[13] *Chapman*, 631 F.3d at 947, fn. 4 (emphasis added).

requirements, they will be free from suit by a person who has a particular disability related to that requirement.

[*Chapman*, 631 F.3d at 948, fn. 5.]

In other words, if it is a barrier that relates to wheelchair users, Langer has standing to see it removed. In this case, the barrier is a lack of wheelchair accessible parking and Langer specifically alleged that it relates to his disability.

Thus, not only did Langer encounter a barrier that affects wheelchair users like himself, he alleged that it caused him difficulty and discomfort. He has standing to challenge this barrier. Langer does not have to explain or provide even greater detail about how it caused him difficulty or discomfort at the pleading stage.

Nor does Langer need to claim that it completely denied him access. This is because the ADA's mandate is not "mere access to public facilities" but a guarantee of a certain quality of access.[14] As this very court, the Honorable Anthony J. Battaglia succinctly noted, "The standard cannot be *is access achievable in some manner*. We must focus on the equality of access. If a finding that ultimate access could have been achieved provided a defense, the spirit of the law would be defeated. It is clear, that the legislative purpose behind these disability access laws would not support such a finding."[15]

Obviously, how much a barrier affects a plaintiff is relevant for a damage analysis but it is simply not relevant for ADA standing. The ADA Standards set the benchmark about what constitutes "full and equal

---

[14] *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012).

[15] *Boemio v. Love's Restaurant*, 954 F.Supp. 204, 208 (S.D. CA 1997).

access."  As one court stated, "The legislature has drawn clear lines with respect to what is legal and what is illegal, and it is not for a court to arbitrarily decide which violations are serious enough to warrant relief."[16] *Chapman*'s holding can be summed up by this simple phrase: "encounters with the noncompliant barriers related to one's disability are sufficient to demonstrate an injury-in-fact for standing purposes."[17]

Furthermore, Langer's allegation that he is currently deterred from returning because of his knowledge of the barriers there provides yet another basis for ADA standing. And the Supreme Court has explained that the degree of evidence regarding standing differs depending on the stage of the case:

> At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.
>
> [*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).]

---

[16] *Wilson v. Haria & Gogri Corp.*, 479 F. Supp. 2d 1127, 1140 (E.D. Cal. 2007).

[17] *Chapman*, 631 F.3d at 948.

According to the Ninth Circuit, at the *pleading stage*, only the "minimal allegations" that "a plaintiff has visited a public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers" are sufficient to "establish that a plaintiff's injury is actual or imminent."[18] That is exactly what Langer has pled in this case. As the *Wilson* court notes, this does not mean that complaint allegations will "survive a factual attack" but they are sufficient at the pleading stage.[19]

And just recently, the Ninth Circuit weighed in again on the topic. In *Civ. Rights Educ.*,[20] several disabled plaintiffs sued a hotel chain for inaccessibility under the ADA.  They did not have any concrete or specific plans to return and the defendants argued that it was not enough to say that "they do not plan to stay at the hotels unless and until [defendant] remedies the violation."[21] But the Ninth Circuit rejected the defense argument: "The Named Plaintiffs need not intend to visit the hotels until after remediation" because "under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury [that] continues so long as equivalent access is denied."[22]

"The Supreme Court has instructed us to take a broad view of constitutional standing in civil rights cases, especially where, as under the

---

[18] *Wilson v. Kayo Oil Co.*, 563 F.3d 979, 980 (9th Cir. 2009).

[19] *Wilson,* 563 F.3d at 980.

[20] *Civ. Rights Educ. and Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093 (9th Cir. 2017)

[21] *Civ. Rights Educ.*, 867 F.3d at 1100.

[22] *Civ. Rights Educ.*, 867 F.3d at 1100-1101.

Opposition to Motion to Dismiss                    Case: 2:20-cv-00951-JAK-PJW

ADA, private enforcement suits are the primary method of obtaining compliance with the Act."[23] In ADA cases, standing should be conferred even "to the outermost limits of Article III."[24] Thus, "[a]llegations that a plaintiff has visited a public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent."[25] And the Ninth Circuit has held that alleging "a desire to visit the accommodation if it were made accessible" is sufficient.[26]

The complaint is sufficiently pled. Langer alleges that he will return to the business to both "avail himself of its goods and to determine compliance with the disability access laws" but only "once it is represented to him" that the business is accessible.[27] Until then, Langer is deterred from returning due to "his knowledge of the existing barriers and his uncertainty about the existence of yet other barriers on the site."[28] This is the same language that the Ninth Circuit has found sufficient to state a claim.

---

[23] *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1-39-1040 (9th Cir. 2008), quoting, *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972).

[24] *Kyles v. J.K. Guardian Sec. Servs.*, 222 F.3d 289, 294 (7th Cir. 2000).

[25] *Doran*, 524 F.3d at 1041

[26] *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008) .

[27] Complaint (Docket Entry 24), ¶ 18.

[28] Complaint (Docket Entry 24), ¶ 18.

1
2

**IV.   Veler's argument that Langer's allegation lacks credibility due to his history of filing ADA lawsuits misreads the law.**

3

Veler also argues that: "Plaintiff's filing history makes his claimed

4

intent to return lack credibility."[29] The exact opposite is true. The Ninth

5

Circuit has recent held that ADA "testers"—folks actively looking for non-

6

complying businesses—have full standing. In *Civ. Rights Educ.*, the Ninth

7

Circuit had to grapple with the question of "whether a plaintiff has

8

constitutional standing where her only motivation for visiting a facility is

9

to test it for ADA compliance."[30] After a thorough analysis of the various

10

circuits that have found that ADA plaintiffs have "tester" standing, the

11

Ninth Circuit found "as a matter of first impression, a plaintiff suing under

12

Title III of the ADA can claim tester standing; plaintiffs' status as testers,

13

rather than bona fide hotel patrons, [does] not deprive them of standing."[31]

14

And the reason is simple: "motivation is irrelevant to the question of

15

standing under Title III of the ADA."[32]

16

And this makes sense. Regardless of the reason for going to a public

17

place, a person with a disability has a right to be free from discrimination

18

and to enjoy barrier-free facilities. It is no defense to an unlawful-

19

discrimination charge to cry, "but you were looking for a violation" or "you

20

were hoping we broke the law."

21

Langer alleged in this complaint that he "will return to The Kar Place

22

to avail himself of its goods or services *and to determine compliance with the*

23

*disability access laws* once it is represented to him that The Kar Place and its

24

25

---

26

[29] Defense PNA (Docket Entry 7-1), p. 5, lines 9-11.

27

[30] *Civ. Rights Educ.*, 867 F.3d at 1096.

28

[31] *Civ. Rights Educ.*, 867 F.3d at 1093.

[32] *Civ. Rights Educ.*, 867 F.3d at 1102.

facilities are accessible."[33] This is a legitimate motive. One of the cases that the Ninth Circuit found persuasive in reaching its tester-standing decision was *Houston v. Marod*. There, the *Houston* court held: "the tester motive behind [plaintiff's] *past and future visits* to the Presidente Supermarket does not preclude his having standing to sue for invasions of his legal rights."[34]

Thus, even if the plaintiff's *sole* motive for initially visiting the business and his *sole* motive for making a future visit is a tester motive, he still has standing. Plaintiff's allegations of dual motives for his reason to return sufficiently state a claim for standing. The fact that Langer is a tester and has an extensive litigation history as a veteran tester supports his claim that he will return. Langer has an important *litigation* reason to return: to have standing. This is an entirely appropriate motivation and it stands independent of proximity or preference as a person who is motivated to ensure compliance will drive further and patronize even places he may not have a "preference" for. Moreover, it provides additional plausibility for the complaint allegations.

## V. This Court has supplemental jurisdiction.

Under 28 U.S.C. § 1367 ("section 1367"), where a district court has original jurisdiction over a claim, it also has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."[35] A state claim is part of the same "case or controversy" as a federal claim when the two "derive from a common nucleus of operative fact and are

---

[33] Complaint (Docket Entry 1), ¶ 17.

[34] *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1332 (11th Cir. 2013). (emphasis added).

[35] 28 U.S.C. § 1367(a).

Opposition to Motion to Dismiss                    Case: 2:20-cv-00951-JAK-PJW

such that a plaintiff would ordinarily be expected to try them in one judicial proceeding."[36]

Here, Langer's ADA and Unruh claims are inextricably intertwined. A violation of the ADA is a per se violation of Unruh.[37] The incident that forms the basis of both claims is identical. The witnesses are identical. All the documentary evidence (photographs, measurements, declarations, etc.) are identical. All the case law, regulatory material, regulations, and accessibility standards necessary to demonstrate liability under both claims in this case are identical. Langer's counsel is not aware of a federal and state claim more intertwined than the ADA/Unruh pair.

And numerous courts have recognized the inescapable conclusion that these ADA/Unruh case are uniquely wedded and it makes no sense to separate them. "Forcing these parties to litigate two nearly-identical cases in separate venues—one here and one in state court—is neither convenient, economical, nor fair."[38] As one district judge reasoned:

> Here, the claims arise from a common nucleus of operative facts. Both the federal and state law claims are based upon architectural barriers which infringe upon the accessibility to the OSH Store. Accordingly, this Court has supplemental jurisdiction over the state law claims. The Court will exercise supplemental jurisdiction over the state law claims. Here, the state issues are not unsettled or novel and complex. Plaintiff's

---

[36] *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 855-56 (9th Cir. 2004), *quoting United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2s 218 (1966).

[37] Cal. Civ. Code § 51(f).

[38] *Baker v. Palo Alto University, Inc.*, 2014 WL 631452, *2 (N.D. Cal., 2014)

Opposition to Motion to Dismiss          Case: 2:20-cv-00951-JAK-PJW

state and federal law claim involve the identical nucleus of operative facts, and require a very similar, if not identical, showing in order to succeed. If this court forced plaintiff to pursue his state law claims in state court, the result would be two highly duplicative trials, constituting an unnecessary expenditure of plaintiff's, defendant's, and the two courts' resources.

> [*Delgado v. Orchard Supply Hardware Corp.*, 826 F. Supp. 2d 1208, 1221 (E.D. Cal. 2011).]

Yet another district court presented a lengthy analysis of the issue and concluded that fairness favored keeping the Unruh claim in federal court "rather than in a separate, and largely redundant, state-court suit."[39] Another court held that supplemental jurisdiction should be exercised where "declining jurisdiction would simply require twice the expenditure of resources as to the evidentiary determinations."[40] Yet another court's framing of the analysis for an ADA/Unruh paired case states that supplemental jurisdiction should be exercised to avoid "two parallel proceedings, one in federal court and one in the state system."[41]

Thus, there is no escaping the fact that the ADA and Unruh claims "both involve identical alleged facts, witnesses, and evidence."[42] Courts have said it makes no sense to find otherwise. "The state and federal claims are so intertwined that it makes little sense to decline supplemental

---

[39] *Kohler v. Rednap, Inc.*, 794 F. Supp. 2d 1091, 1096 (C.D. Cal. 2011).

[40] *Daenzer v. Wayland Ford, Inc.*, 193 F. Supp. 2d 1030, 1043 (W.D. Mich. 2002).

[41] *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 787 (3d Cir. 1995).

[42] *Schoors v. Seaport Village Operating Co., LLC*, 2017 WL 1807954, *4 (S.D. Cal. May 5, 2017).

jurisdiction. To do so would create the danger of multiple suits, courts rushing to judgment, increased litigation costs, and wasted judicial resources."[43] Thus, it is not surprising that district courts "routinely exercise jurisdiction over supplemental claims under the UCRA."[44]

## VI. The state claims do not predominate, there are no novel or complex state issues, and there are no exceptional circumstances to justify declining to exercise supplemental jurisdiction.

Under section 1367(c), a court may decline to exercise supplemental jurisdiction over a related state claim only if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."[45]  None of those factors are present here.

### A.     There are no novel or complex issues of state law.

Veler does not identify any novel or complex state law issues and, therefore, Langer cannot address any such claim. Nonetheless, the courts that have analyzed the issue note that: ""[C]ourts routinely exercise jurisdiction over supplemental claims under the UCRA and the DPA, as *these types of claims do not generally raise novel or complex issues of state*

---

[43] *Moore v. Dollar Tree Stores Inc.*, 85 F. Supp. 3d 1176, 1194 (E.D. Cal. 2015).

[44] *Kohler v. Islands Restaurants, LP*, 956 F. Supp. 2d 1170, 1175 (S.D. Cal. 2013).

[45] *Exec. Software,* 24 F.3d at 1555-56, citing 28 U.S.C. § 1367(c).

*law*."[46] Although Veler has not raised any such issues, if the issue becomes relevant, this Court may want to review a district court decision that addressed—and dismantled—a number of claims that Unruh presents novel or complex issues.[47]

### B.   The state claim for a single penalty certainly does not predominate, much less "substantially" predominate in this case.

Veler does not identify or make any argument about how the state claim substantially predominates. Instead, Veler merely references the *Schutza v. Cuddeback* decision, apparently expecting this Court to read it and figure out how it applies.

But the *Cuddeback* case is distinguishable and riddled with error. First, the *Cuddeback* court ruled on an *unopposed motion*.[48] The defense moved the court to dismiss Unruh (not exercise supplemental jurisdiction) and the Plaintiff *did not oppose* sending the Unruh claim to state court *in that case*. It was odd, therefore, that the court went on to "rule on the merits" in that matter. Without the benefit of briefing from the opposing counsel, the court risked making a mistake. And the *Cuddeback* court made a whopper of a mistake in its analysis.

The *Cuddeback* court found that there were "two main reasons" for declining supplemental jurisdiction over the Unruh claim.[49] The first reason cited by *Cuddeback* was erroneous. The *Cuddeback* court noted that

---

[46] *Kohler v. Islands Restaurants, LP*, 956 F. Supp. 2d 1170, 1175 (S.D. Cal. 2013) (emphasis added).

[47] See *Kohler v. Rednap, Inc.*, 794 F. Supp. 2d 1091, 1097 (C.D. Cal. 2011).

[48] *Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1027 (S.D. Cal. 2017)

[49] *Cuddeback, supra*, at 1029.

Opposition to Motion to Dismiss          Case: 2:20-cv-00951-JAK-PJW

the plaintiff had identified nine barriers in the complaint and, therefore, concluded: "These nine allegations, if proven, would entitle Plaintiff to a minimum monetary award of $36,000. In contrast, under the ADA, Plaintiff would only be entitled to injunctive relief. Thus, under the circumstances presented, the Court finds that the monetary damages sought by Plaintiff under the Unruh Act substantially predominate over federal injunctive relief." [50]

*Cuddeback* was flat-out wrong in this analysis. An Unruh plaintiff cannot recover multiple penalties merely because there are multiple barriers. The statute is quite clear: "Statutory damages may be assessed pursuant to subdivision (a) based on each particular occasion that the plaintiff was denied full and equal access, and not upon the number of violations of construction-related accessibility standards identified at the place of public accommodation where the denial of full and equal access occurred."[51]

The second reason relied upon by the *Cuddeback* was that the plaintiff had a stand-alone Unruh claim and, therefore, needed to prove *intentional* conduct. "Plaintiff places intentionality at the heart of his claims for relief . . . resolving the issue of intentional discrimination entails application of state-law standards . . . bolster[ing] the conclusion that his Unruh Act claim substantially predominates over his ADA claim."[52]  In the present case, however, Langer does not have a stand-alone Unruh claim. Langer's Unruh claim is predicated upon the ADA.[53]  Thus, Langer does not need to prove intent, has not alleged intentional discrimination, and

---

[50] *Cuddeback*, *supra*, at 1029-30.

[51] Cal. Civ. Code § 55.56(e).

[52] *Cuddeback*, *supra*, at 1030.

[53] Complaint (Docket Entry 1), ¶ 32.

Opposition to Motion to Dismiss          Case: 2:20-cv-00951-JAK-PJW

1
2
3

intent is not "at the heart" of his case: "A plaintiff who establishes a violation of the ADA, therefore, need not prove intentional discrimination in order to obtain damages under section 52."[54]

4
5
6

### C.   There are no exceptional circumstances or compelling reasons.

7
8
9
10
11
12
13

Veler accurately identifies the fact that there are "[s]everal judges in the Central District now routinely flag construction-related access cases with sua sponte orders" regarding supplemental jurisdiction and then dismiss the state claims. These decisions are on appeal. The first one was argued to the Ninth Circuit on July 8, 2020.[55]   The detailed and comprehensive briefing on that topic cannot be reproduced here due to length constraints but is available from PACER for the Ninth Circuit case.

14
15
16
17
18

In short, however, these district court judges have identified ADA plaintiff's "forum shopping" and choosing federal court over state court as evasive, abusive, and an end-run around state court procedures, finding such decisions to be an exceptional circumstance. But this simply cannot withstand scrutiny.

19
20
21
22

It is a long-established fact that when a party has a legitimate basis for federal jurisdiction, "his motive in preferring a Federal tribunal is immaterial."[56] In fact, "the cases are numerous in which it has been decided that the motives of litigants in seeking Federal jurisdiction are

23
24
25

---

26  [54] *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 665 (2009).

27  [55] *Arroyo v. Rosas*, Ninth Circuit Case No. 19-55974.

28  [56] *City of Chicago v. Mills*, 204 U.S. 321, 330, 27 S. Ct. 286, 289, 51 L. Ed. 504 (1907).

immaterial."[57] Thus, "We need not concern ourselves with why these parties prefer to be in federal court so long as there is a legitimate basis for jurisdiction."[58]

Not only are a plaintiff's motives for choosing one legitimate forum over another "immaterial," but even if such motives were expressly and explicitly to avoid burdensome state court procedural rules, there is nothing wrong with this motive. As the Supreme Court has noted, there is nothing improper with "the litigation strategy of countless plaintiffs who seek a forum with favorable substantive or procedural rules or sympathetic local populations."[59]

Most courts understand this obvious and established principle. That is why most federal judges respond to cries of "forum-shopping" with something akin to Judge M. James Lorenz's recent holding:

> Finally, Defendant argues under the catchall subsection (c)(4) that Plaintiff is forum shopping to avoid the procedural hurdles under state law, and that this creates "exceptional circumstances" and "compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). "Declining jurisdiction outside the subsection (c)(1)–(3) should be the exception, rather than the rule." *Exec. Software*, 24 F.3d at 1558. This would occur "only if the circumstances are quite unusual." *Id.*

---

[57] *Wheeler v. City & Cty. of Denver*, 229 U.S. 342, 351, 33 S. Ct. 842, 844, 57 L. Ed. 1219 (1913).

[58] *In re Aircraft Disaster Near Roselawn, Indiana on October 31, 1994*, 909 F. Supp. 1083, 1090 (N.D. Ill. 1995), *aff'd and remanded sub nom. In re Air Crash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 96 F.3d 932 (7th Cir. 1996).

[59] *Keeton*, 465 U.S. at 778–79.

---

1   That procedure in state court differs from procedure in
2   federal court, and that the plaintiff may select the forum
3   based on her preference is not an unusual circumstance. It
4   has long been decided that federal procedural rules govern in
5   federal court regardless of their effect on state substantive
6   rights. See *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins.*
7   *Co.*, 559 U.S. 393, 409-10, 130 S.Ct. 1431, 176 L.Ed.2d
8   311 (2010) (discussing *Hanna v. Plumer*, 380 U.S. 460, 85
9   S.Ct. 1136, 14 L.Ed.2d 8 (1965), among other authorities).

10

11  Furthermore, the plaintiff is "the master of the claim," and by
12  pleading can either subject him- or herself to, or avoid,
13  federal jurisdiction. *See*, e.g., *Caterpillar, Inc. v. Williams*, 482
14  U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); see
15  also cases cited therein. Even if the Court were to conclude
16  that this case presents exceptional circumstances and
17  compelling reasons, it would also have to conclude that
18  dismissal would best "accommodate the values of economy,
19  convenience, fairness, and comity." *Exec. Software*, 24 F.3d
20  at 1557 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S.
21  343, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)); *see also*
22  *Exec. Software*, 24 F.3d at 1558. For the reasons stated above,
23  dismissing state law claims would not accommodate any of
24  those values.

25      [*White v. Wisco Restaurants, Inc.*, 2018 WL
26      1510611, at *4 (S.D. Cal. Mar. 27, 2018).]

27

28

18

Or, as another court stated when rejecting a claim of improper-forum shopping:

> First, the fact that Plaintiff is "forum shopping" by filing suit in this Court rather than state court does not constitute a "compelling reason" for declining jurisdiction. There is no reason why Plaintiff should have to file his claims in state court instead. This sort of forum-shopping is commonplace among plaintiffs and removing defendants alike and is not an 'exceptional' circumstance giving rise to compelling reasons for declining jurisdiction, as required by section 1367(c)(4).
>
> [*Kohler v. Rednap,* 794 F. Supp. 2d at 1096.]

Some judges would even reject the phrase "forum-shopping" entirely in this context:

> Of course the plaintiff may elect to bring the entire action in state court rather than federal court where concurrent jurisdiction exists. However, the choice to proceed with a federal claim in federal court is not forum shopping, but the exercise of a congressionally recognized federal right. The lack of prejudice to the defendant by the availability of the federal forum is evident from the fact that the defendant may elect to remove a claim from state court under 28 U.S.C. § 1441 (1976).
>
> [*Hamilton v. Roth*, 624 F.2d 1204, 1214, fn. 8 (3d Cir. 1980).]

In sum, the Supreme Court was not wrong in *Keeton* when it noted that there are "countless" plaintiffs that choose among state and federal forum based on which forum has the more favorable substantive or procedural rules.[60] And neither Judge Fees, nor Judge Lorenz were wrong then they note that it is "commonplace" and "not an unusual circumstance" for a plaintiff to choose a forum based on his or her preference.[61] Given that it is *commonplace*, entirely *usual* and there are *countless* plaintiffs engaging in this very sort of forum-selection process, how can this possibly be an "exceptional circumstance" under 1367(c)?

These handful of district court judges that are routinely declining to exercise supplemental jurisdiction are engaged in docket clearing and make no bones about it. These judges recognize the expenses and hurdles that are posed by forcing a plaintiff to prosecute his ADA claim in federal court and then an almost identical case (same facts, witnesses, exhibits) for his Unruh claim in state court. Veler cites one such decision:

> Schutza also urges that to decline supplemental jurisdiction here would be an inefficient use of judicial resources because two suits concerning the same facts would proceed parallel in two separate courts. But this is a problem of his own making. As discussed above, there is no relief available to Schutza in federal court that could not be secured in state court. Had he brought this suit in state court, there would have been only one suit pending and he would have been eligible to receive every form of relief he seeks: an injunction, money damages, and attorney's fees. By being "inefficient" and declining to

---

[60] *Keeton,* 465 U.S. at 778–79.

[61] *White,* 2018 WL 1510611, at *4; *Kohler,* 794 F. Supp. 2d at 1096.

Opposition to Motion to Dismiss          Case: 2:20-cv-00951-JAK-PJW

exercise supplemental jurisdiction over his state claim, this Court is simply recognizing that California has a strong interest in interpreting and enforcing its own rules without federal courts serving as a convenient end-around for creative litigants. If that results in occasional inefficiency, it's a worthwhile tradeoff.

> [*Schutza v. Alessio Leasing, Inc.*, 2019 WL 1546950, at *4 (S.D. Cal. Apr. 8, 2019).]

But this is precisely why the supplemental jurisdiction statute was enacted. District courts were doing exactly this type of thing—notably against civil rights plaintiffs—prior to the passage of the statute. Before the supplemental statute was enacted, the controlling precedent was *United Mine Workers of Am. v. Gibbs*.[62] As the Ninth Circuit explains, the *Gibbs* doctrine of flexibility "led a number of courts to decline pendent jurisdiction in situations not mentioned specifically in *Gibbs*."[63]

And this "very flexibility" led to the "doctrine's most severe criticism."[64] The flexibility and discretion enjoyed by the district courts often led to abuse: "many district courts in the past were hostile to pendent jurisdiction in civil rights cases and used their broad discretion to dismiss

---

[62] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2s 218 (1966).

[63] *Exec. Software N. Am., Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 24 F.3d 1545, 1553 (9th Cir. 1994), *overruled on other grounds by California Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

[64] *Executive Software*, 24 F.3d at 1554.

Opposition to Motion to Dismiss          Case: 2:20-cv-00951-JAK-PJW

supplemental claims, often under the guise of efficiency and fairness."[65] This concern, in fact, was voiced by one of the principle drafters of section 1367, Prof. Thomas Mengler, who expressed trepidation at permitting courts to dismiss state law claims when they "predominated" given the abuses by a number of district courts with respect to civil rights cases.[66]

Thus, the Federal Court Study Committee made an express recommendation to Congress that a supplemental jurisdiction statute be enacted, leading to the Judicial Improvements Act of 1990[67] and the enacting of the supplemental jurisdiction statute found at 28 U.S.C. § 1367.

Section 1367(a) states that district courts "*shall* have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . ."[68]  Thus, concluded the Ninth Circuit, the statute speaks in "mandatory terms."[69]  This means that "unless a court properly invokes a section 1367(c) category . . . supplemental jurisdiction *must be*

---

[65] Denis F. McLaughlin, *The Federal Supplemental Jurisdiction Statute--A Constitutional and Statutory Analysis*, 24 Ariz. St. L.J. 849, 993 (1992)

[66] *Federal Courts Study Committee Implementation and Civil Justice Report Act: Hearings on H.R. 5381 Before the Subcomm. on Courts, Intellectual Property, and the Administration of Justice,* 101st Cong., 2d Sess. at 708 (1991) (the letter of Prof. Thomas M. Mengler).

[67] Pub. L. No. 101-650, 104 Stat. 5089.

[68] *Executive Software*, 24 F.3d at 1555 (emphasis in original).

[69] *Executive Software*, 24 F.3d at 1555.

---

22

*asserted.*"[70] The "consequence of the statutory structure," therefore "changes the nature of the *Gibbs* discretionary inquiry."[71]

The district court still enjoys discretion, but such discretion is to be exercised only *after* one of the four statutory bases are found. "Congress intended the exercise of discretion to be *triggered* by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."[72] As the Ninth Circuit notes, it is only after the factual predicate exists that the district court then exercises discretion when applying the *Gibbs* factors. "Once that factual predicate is identified, the exercise of discretion, of course, still is informed by whether remanding the pendent state claims comport with . . . the values of economy, convenience, fairness, and comity."[73]

If there was no section-1367-supplemental-jurisdiction statute that framed supplemental jurisdiction in mandatory terms, but simply gave district courts unfettered discretion, consider the quandary that a plaintiff would face if a court did not like his type of case:

> Without supplemental jurisdiction, a plaintiff with a valid federal law claim could not assert in a federal court action a related state law claim, unless an independent basis of subject matter jurisdiction existed. In this situation, the plaintiff would be forced to choose among three unsatisfactory alternatives.

---

[70] *Executive Software*, 24 F.3d at 1556 (emphasis added).

[71] *Executive Software*, 24 F.3d at 1556.

[72] *Executive Software*, 24 F.3d at 1557 (emphasis added).

[73] *Executive Software*, 24 F.3d at 1557.

23

First, the plaintiff could split the action, proceeding on the federal law claim in federal court and on the state law claim in state court. In addition to imposing *unnecessary expense and inconvenience* on both the litigants and the judicial system in conducting two lawsuits, the plaintiff would face res judicata and collateral estoppel issues in the later concluded action.

The plaintiff's second alternative would be to abandon the state law claim entirely and proceed only on the federal law claim in federal court. *This option is unfair* to the plaintiff who possesses a substantial state law claim, but desires to have the federal law claim decided in a federal forum.

Third, the plaintiff could bypass the federal forum entirely in order to proceed on both the federal and state law claims in a single lawsuit in state court . . . *this option deprives a plaintiff with a legitimate federal law claim from having that claim adjudicated in a federal forum*. Such a result *runs contrary* to one of the principal purposes for creating the federal court system—to provide a forum for the adjudication of federal law claims.

> [Denis F. McLaughlin, *The Federal Supplemental Jurisdiction Statute--A Constitutional and Statutory Analysis*, 24 Ariz. St. L.J. 849, 863–64 (1992) (emphasis added, internal quotes and cites omitted for readability).]

**VII.   Conclusion**

  Plaintiff respectfully request this court deny Veler's motion to dismiss the case.


Dated: July 24, 2020    CENTER FOR DISABILITY ACCESS
           /s/ Russell Handy
        By: _____.
        Russell Handy, Esq.
        Attorneys for Plaintiff

Opposition to Motion to Dismiss    Case: 2:20-cv-00951-JAK-PJW